# United States District Court
### for the
### Southern District of Indiana

| | |
|---|---|
| Samantha Ball and Daniel Ball,<br>Individually and on Behalf of their<br>Minor Children, M.B., A.H., and E.B.,<br>   *Plaintiffs*, <br><br>  v.<br><br>Brooke Carey,<br>Melissa Pherson,<br>Craig Beougher, and the<br>Indiana Department of Child Services,<br>   *Defendants*. | )<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DAMAGES

Plaintiffs Samantha Ball ("Samantha") and Daniel Ball ("Daniel"), individually and on behalf of their minor children, M.B., A.H., and E.B., by counsel, file their Complaint for Damages, and in support hereof, state as follows:

### I. Nature of the Case

1. This case arises from events that occurred in Madison County, Indiana in May 2024. An individual who has never been identified to Plaintiffs alleged to Defendant Indiana Department of Child Services ("DCS") that Daniel had "beat up" Samantha, that her jaw and lip were bruised, and that her jaw may be broken. On May 7, 2024, Defendant Brooke Carey ("FCM Carey") went to Samantha and Daniel's home to investigate. Samantha and Daniel both denied the allegations. Further, Samantha only had some discoloration on her lip, which she advised FCM Carey was

due to her toddler hitting her with a water bottle. FCM Carey also interviewed M.B. and A.H., who both denied any violence in the home.

2.      Thereafter, FCM Carey prepared a report that contained material misrepresentations and omitted material facts, including a lie that Samantha had slight bruising on her right jaw and the right side of her neck. DCS Family Case Manager Supervisor Melissa Pherson ("Supervisor Pherson"), who met with Samantha on May 8 2024, knew that Samantha did not have bruising on her right jaw and the right side of her neck and told DCS attorney Craigh Beougher ("Attorney Beougher") this information. Nonetheless, Attorney Beougher prepared three verified petitions alleging that the Balls' minor children—M.B., A.H., and E.B.—were children in need of services (the "CHINS petitions"). The CHINS petitions contained knowingly false representations, including that Samantha had injuries to separate areas of her face. Supervisor Pherson signed the CHINS petitions under the penalties for perjury. FCM Carey later falsely testified under oath that the CHINS petitions were true and accurate.

3.      As a result of FCM Carey's, Supervisor Pherson's, and Attorney Beougher's (collectively, the "Individual Defendants") false representations, on May 9, 2024, the Madison Circuit Court No. 2 ordered the removal of M.B., A.H., and E.B.

4.      The bogus CHINS case was eventually dismissed on or around June 25, 2024. Due to the Defendants' conduct, however, Samantha and Daniel were separated from their children as follows:

- M.B.: May 9, 2024, through May 16, 2024.[1]
- E.B.: May 9, 2024, through June 25, 2024.
- A.H.: May 9, 2024, through October 21, 2024.

5.    The family separation has caused the Ball family serious emotional and financial harm.  In this case, Plaintiffs seek all damages available under the law for the Defendants' illegal and unconstitutional conduct.

## II.  Jurisdiction and Venue

6.    This Court has jurisdiction over the subject matter of Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.  The Court has pendant jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.    This Court has jurisdiction over the parties because the Individual Defendants are domiciled in Indiana and DCS is an agency of the State of Indiana

8.    Venue is proper in the Southern District of Indiana, Indianapolis Division, under 28 U.S.C. § 1391(b) because the events at issue occurred in Madison County, Indiana

## III.  The Parties

9.    Samantha is a resident of, and is domiciled in, Madison County, Indiana.

10.    Daniel is a resident of, and is domiciled in, Madison County, Indiana.

11.    Samantha and Daniel are married.

12.    Samanth and Daniel have three minor children E.B., M.B., and A.H.

13.    Samantha and Daniel are the biological parents of E.B.

---

[1] M.B. was scheduled to go to Japan to visit her mother, Vanessa Foor, from approximately May 16, 2024, through the end of July 2024.

14.    E.B. was born in 2022; he was one year old in May 2024.

15.    Samantha and a man named Cody Harris are the biological parents of A.H.

16.    Daniel is A.H.'s stepfather.

17.    A.H. was born in 2016; she was seven years old in May 2024.

18.    Daniel and a woman named Vanessa Foor are the biological parents of M.B.

19.    Samantha is M.B.'s stepmother.

20.    M.B. was born in 2011; she was twelve years old in May 2024.

21.    Defendant DCS is an agency or instrumentality of the State of Indiana.

22.    Defendant FCM Carey was at all relevant times employed as a Family Case Manager by DCS.

23.    Defendant Supervisor Pherson was at all relevant times employed as a Family Case Manager Supervisor by DCS.

24.    Defendant Craig Beougher was at all relevant times employed as an attorney by DCS.

## IV.  Facts

25.    On May 6, 2024, DCS received a report that Daniel had "beat up" Samantha, that her jaw and lip were bruised, and that her jaw may be broken.

26.    FCM Carey investigated the report for DCS.

27.    On May 7, 2024, FCM Carey made an "unannounced pop in" at Daniel and Samantha's home in Elwood, Indiana.

4

28. Daniel audio recorded FCM's Carey's visit at their home.

29. Both Daniel and Samantha denied the allegations.

30. FCM Carey, in respect of Samantha's face, stated "I don't see any bruising or anything like that."

31. Samantha and Daniel told FCM Carey that on the previous Thursday, which would have been May 2, 2024, E.B. had chucked a metal water bottle and it had hit Samantha's lip.

32. Daniel and Samantha showed FCM Carey the bottle.

33. FCM Carey stated, "Oh my gosh, yeah, that's a heavy bottle."

34. She further stated, "I feel like even empty that would do some damage."

35. Samantha and Daniel showed FCM Carey where the bottle had hit Samantha's lip, causing discoloration on the underside of her lip.

36. Samantha did not have any other bruising on her face or neck.

37. Daniel told FCM Carey that he was in the middle of a custody battle with his "ex" and that Samantha was also in a custody battle.

38. Daniel told FCM Carey that they imagined the false report was related to the custody battles.

39. Daniel stated that multiple false reports had previously been made resulting in DCS coming to their home on prior occasions.

40. FCM Carey stated that this information was good background information and she would be sure to note it.

41. Samantha and Daniel allowed FCM Carey to inspect their home.

5

42. FCM Carey asked to take a picture of, in her words, the "very heavy water bottle."

43. FCM Carey did not ask to take any pictures of Samantha's face.

44. Daniel told FCM Carey, "the last time that DCS was here, the allegations were that I had been beating the hell out of her for days and that the cops had been here several times but hadn't taken me to jail, and the cops have never been to our home."

45. Samantha agreed to talk with FCM Carey privately.

46. During that conversation, Samantha again denied that Daniel had been violent with her.

47. Samantha and Daniel also allowed FCM Carey to interview M.B. at M.B.'s school without Samantha and Daniel present.

48. During that interview, M.B. told FCM Carey that there was no physical fighting at home and she felt safe.

49. Samantha and Daniel also allowed FCM Carey to interview A.H.

50. During that interview, A.H. also told FCM Carey that there was no physical fighting at home and she felt safe.

51. On May 8, 2024, Samantha went to the DCS Office in Madison County to meet with DCS personnel and give another voluntary statement.

52. At the May 8, 2024, meeting Samantha met with FCM Carey, Supervisor Pherson, and another DCS employee, Sonya Blades.

53.    At the May 8, 2024, meeting, which again was only one day after FCM's Carey's May 7, 2024 "unannounced pop in" visit, Supervisor Pherson did not observe any bruising to Samantha's face or neck.

54.    During the May 8, 2024, meeting, Samantha again unequivocally denied that Daniel had harmed her in any way.

55.    In addition, in respect of the discoloration on her lip, Samantha informed FCM Carey and Supervisor Pherson that she is anemic and bruises easily.

56.    Despite the overwhelming evidence that the allegations made against Daniel were false, DCS set out to remove M.B., A.H., and E.B. from Samantha and Daniel.

57.    FCM Carey began preparing a report tilted "Intake Officer's Report of Preliminary Inquiry and Investigation" (the "Preliminary Inquiry").

58.    FCM Carey was going on vacation and so Supervisor Pherson completed the Preliminary Inquiry and signed it under penalties of perjury.

59.    The preliminary inquiry report contained material misrepresentations and omitted material facts.

60.    Attorney Beougher prepared the CHINS petitions.

61.    Prior to Attorney Beougher preparing the CHINS petitions, Supervisor Pherson advised Attorney Beougher that when she observed Samantha's face on May 8, 2024, Samantha's face and neck were not bruised.

62.     Nonetheless, the CHINS petitions prepared by Attorney Beougher, like the Preliminary Inquiry, contained material misrepresentations and omitted material facts.

63.     The CHINS petitions included, among other things, the following misrepresentations:

- At FCM Carey's May 7, 2024, visit, FCM Carey observed slight bruising on Samantha's right jaw line and the right side of her neck.

- DCS did not believe a small child who is 18 months old could throw a water bottle with the force necessary to cause "the injuries."

- The "injuries are to separate areas of her face indicating it was not from one single throw of a water bottle by a toddler."

- "The family has a history of [domestic violence] as shown by the substantial number of assessments that have been called in to DCS."

64.     These statements were knowingly false.

65.     The CHINS petitions did not include the information that Samantha was anemic.

8

66.    The CHINS petitions did not include Daniel's statements to FCM Carey that Samantha and Daniel were both in custody battles with their prior partners and that multiple reports had been made in the past that were demonstrably false.

67.    In respect of the so-called history of domestic violence, the CHINS petitions also did not advise the judge that not one prior allegation of domestic violence had been substantiated and that Daniel had no prior convictions for domestic violence.

68.    Attorney Beougher signed the CHINS petitions.

69.    Supervisor Pherson signed the CHINS petitions under the penalties for perjury.

70.    On May 9, 2024, the Madison Circuit Court No. 2—relying upon the CHINS petitions containing false representations and material omissions—entered an order authorizing DCS to remove M.B., A.H., and E.B. from Samantha and Daniel's  home.

71.    That same day, DCS personnel and multiple police officers came to Samantha and Daniel's home and removed M.B., A.H., and E.B. without Samantha and Daniel's consent.

72.    On May 13, 2024, the Madison Circuit Court conducted an initial detention hearing.

73.    At that hearing, FCM Carey took an oath, swearing or affirming that any testimony she gave would be the truth.

74.    FCM Carey then falsely testified that she was familiar with the Preliminary Inquiry and the CHINS petitions and that those documents were true and accurate.

75.    The Court relied on FCM Carey's false testimony and the material misrepresentations contained in the CHINS petitions.

76.    Specifically, Magistrate T. Grey Chandler adopted the recommendation of DCS and kept the children placed outside Samantha and Daniel's home.

77.    Both the initial removal of the children and the continued placement of the children outside the home was caused by the knowingly false representations made to the Court by FCM Carey, Supervisor Pherson, and Attorney Beougher.

78.    In late May 2024, Daniel provided Supervisor Pherson with the audio recording of FCM Carey's visit on May 7, 2024.

79.    On or around June 25, 2024, DCS moved to dismiss the CHINS case.

80.    The Madison Circuit Court No. 2 granted the motion and dismissed the CHINS case.

81.    The removal of the children, however, had already caused irreparable harm.

82.    In addition, as a result of the false allegations and the removal of the children, on May 13, 2024, M.B.'s biological mother, Vanessa Foor, filed a motion for immediate emergency custody of M.B. in a paternity case pending under Cause No. 48C01-1205-JP-000221.

83.    Daniel incurred substantial attorney fees fighting that motion.

84.    Daniel also incurred attorney fees in the bogus CHINS action.

85.    Further, as a result of the false allegations and the removal of the children, A.H.'s biological father, Cody Harris, refused to allow Samantha to exercise parenting time with A.H. after the CHINS case was dismissed.

86.    Samantha hired an attorney to file a motion in Samantha and Mr. Harris's divorce case, which was in Allen Circuit Court under Cause No. 02C01-1803-DC-000331, requiring Mr. Harris to permit Samantha to exercise parenting time with A.H.

87.    That motion was eventually granted on October 21, 2024, but Samantha was separated from A.H. from May 9, 2024, until October 21, 2024.

88.    Samantha incurred substantial attorney fees in obtaining an order requiring Mr. Harris to allow Samantha to exercise parenting time with A.H.

89.    With the exception of some supervised visits, Samantha and Daniel were separated from their children as follows:

- M.B.: May 9, 2024, through May 16, 2024.
- E.B.: May 9, 2024, through June 25, 2024.
- A.H.: May 9, 2024, through October 21, 2024.

90.    In addition, Daniel has a minor daughter, El. B., who lives with her mother, Kaylee Brooke, in Florida.

91.    Prior to May 2024, Daniel had parenting time with El. B.

92.    Daniel was scheduled to have two weeks of uninterrupted parenting time with El. B. in the summer of 2024, three weeks of uninterrupted parenting time in the summer of 2025, and additional parenting time during various school breaks.

93.    As a result of the false allegations and the removal of the children, Ms. Brooke has withheld El. B. from Daniel.

94.    Daniel has not had parenting time with El. B. since May 2024.

95.    Daniel has hired an attorney in an effort to regain parenting time with El. B.

96.    Daniel has incurred attorney fees related to his parenting time with El. B.

97.    The Individual Defendants' conduct has caused irreparable harm including but not limited to emotional and psychological damage to the children, Samantha, and Daniel, as well as financial harm.

98.    The Individual Defendants' acted under color of state law at all relevant times.

## V.  Claims

### Count 1: Violation of the Fourteenth Amendment to the
### United States Constitution against the Individual Defendants
#### *Intrusion upon the autonomous family relationship*

99.    Plaintiffs incorporate all of the preceding paragraphs as if fully set forth herein.

100.    The Individual Defendants caused undue interference in the family relationship of all Plaintiffs.

101.    The Individual Defendants' conduct violated the substantive due process rights of the Balls to direct the care and upbringing of E.B., M.B., and A.H. and to protect the minor children.

102.   The Individual Defendants' conduct proximately caused Plaintiffs' damages.

103.   Plaintiffs are entitled to attorney fees under 42 U.S.C. § 1988.

### Count 2: Violation of Substantive
### Due Process Rights against the Individual Defendants

104.   Plaintiffs incorporate all of the preceding paragraphs as if fully set forth herein.

105.   Plaintiffs have a fundamental right to privacy which is protected by the Fourteenth Amendment.

106.   Included in their Fourteenth Amendment right to privacy is the right to raise their children as they see fit.

107.   The Individual Defendants' conduct violated the substantive due process rights of the Balls to direct the care and upbringing of the minor children and to protect them.

108.   The Individual Defendants violated the Plaintiffs' due process rights when they made material misrepresentations in, and omitted material facts from, the Preliminary Inquiry and the CHINS petitions.

109.   FCM Carey violated the Plaintiffs' due process rights when she made material misrepresentations under oath at the May 13, 2024, initial detention hearing.

110. The Individual Defendants' misrepresentations and omissions were made knowingly or recklessly to the Court which caused the removal of the children and the separation of the children from Samantha and Daniel.

111. Plaintiffs have been damaged as a result of the Individual Defendants' conduct.

112. Plaintiffs are entitled to attorney fees under 42 U.S.C. § 1988.

### Count 3: Malicious Prosecution against the Individual Defendants

113. Plaintiffs incorporate all of the preceding paragraphs as if fully set forth herein.

114. Indiana law recognizes the tort of malicious prosecution.

115. However, state actors enjoy immunity from claims of malicious prosecution.

116. Therefore, Indiana does not provide a remedy against state actors for malicious prosecution.

117. Consequently, Plaintiffs may bring a claim for malicious prosecution under 42 U.S.C. § 1983.

118. The Individual Defendants improperly instituted, caused to be instituted, maintained, or caused to be maintained, the CHINS action against Plaintiffs.

119. The Individual Defendants had no probable cause to institute, caused to be instituted, maintain, or caused to be maintained the CHINS action against Plaintiffs.

120.    In doing so, the Individual Defendants acted with malice.

121.    The CHINS action was terminated in Plaintiffs' favor.

122.    As a direct and proximate result of the actions and inactions of the Individual Defendants, Plaintiffs suffered injuries and damages.

123.    In respect of malice, malice can be inferred from the lack of evidence or probable cause for the CHINS action and Defendants knowingly making misrepresentations to the Court.

124.    Malice can also be inferred from the fact that the Individual Defendants withheld exculpatory evidence from the Court.

125.    The Individual Defendants deprived Plaintiffs of their rights, privileges, and immunities as secured by the laws and Constitution of the United States.

126.    Plaintiffs suffered damages, including reputational, emotional, and financial harm.

127.    Plaintiffs suffered emotional distress.

128.    Plaintiffs are entitled to attorney fees under 42 U.S.C. § 1988

**Count 4: Indiana State law Claim for Intentional Infliction of Emotional Distress**

129.    Plaintiffs incorporate all of the preceding paragraphs as if fully set forth herein.

130.    The Individual Defendants intentionally and/or recklessly engaged in extreme and outrageous conduct which caused the Plaintiffs to suffer severe emotional distress.

15

131. The Individual Defendants unlawfully interfered with Plaintiffs' constitutionally protected rights.

132. The Individual Defendants conduct was beyond any conduct acceptable for the behavior of government officials so as to be regarded as atrocious.

133. The Individual Defendants acted within the course and scope of their employment with DCS.

134. DCS is legally responsible under Indiana law for the conduct of the Individual Defendants.

135. In the alternative, the Individual Defendants acted outside the course and scope of their employment with DCS and are, therefore, individually liable for their own conduct.

## VI.  Relief Requested

Plaintiffs respectfully request  all relief available under the law, including:

    a.  Compensatory damages to be determined by a jury;

    b.  Punitive damages to be determined by a jury;

    c.  Attorney pursuant to 42 U.S.C § 1988; and

    d.  All other relief just and appropriate in the premises.

[*Rest of page intentionally left blank*]

## Jury Demand

Plaintiffs demand that this matter be tried to a jury.

Respectfully submitted,

 /s/ Robert D. King, Jr.
Robert D. King, Jr. (#20963-49)
ROB KING & ASSOCIATES, TRIAL LAWYERS
320 S. Rangeline Rd.
Carmel, IN 46032
Phone: (317) 916-0000
Fax: (317) 955-1844
Email: rking@robkinglaw.com

17